Shaw, C. J.
This was an action on the case for a libel, published on the 5th day of July, 1850, in a newspaper called the “ Boston Pilot,” of which the defendant was publisher and proprietor.
It appeared in evidence, that a meeting was held in Emigrant Hall, so called, in Congress square, in Boston, on the 27th day of June, 1850, by the Mends of Thomas Darcy McGee, for the purpose of assisting him to establish a newspaper in Boston, at which meeting the plaintiff was present, and offered resolutions, and made a speech in favor of the object. Soon after this meeting, the publication charged as libellous appeared. It is a ludicrous report of the proceedings of the meeting, and the appearance and remarks of the plaintiff. The article was not written by the defendant, nor was he present at the meeting. It was written by one Wilson, who *229 was called as a witness. The evidence also shows that the plaintiff was the secretary of the “ Journeymen Tailors’ Association,” and was employed by that society as then: manager, salesman, and book-keeper, at a salary of nine dollars a week. He had espoused the cause of the members of the society in a strike, which was organized here soon after his arrival in this country. He had been here about two years, at the time of the alleged libel. Soon after leaving the journeymen tailors’ employment, he established a clothing store, called “ The Beehive, or Sempstresses’ Cooperative Society,” the basis of which was an association of females, who became shareholders on paying an entrance fee of five dollars each, and so obtained the right to receive, at the end of each year, a share in three fourths of the profits of the society, in proportion to their interest, and to receive pay for their work at improved prices. The gravamen of the libel was, that the plaintiff was therein alleged to have been “ kicked out ” of the journeymen tailors’ association, and to have deceived the members of the Beehive society by false pretences.
The defendant undertook in his specification of defence, and offered evidence at the trial to show, that the charges in the libel were true, but failed to do so. Under our statute, such an attempt to prove the truth of the allegations, and the filing of such a plea, are no grounds for increasing the damages, and the law was so laid down by the court; but if the jury see, in such proceedings, any proof of a continued desire on the part of the defendant to injure the plaintiff, and are in some degree influenced thereby, the court have no power to prevent the consequences of such impressions upon their minds. The jury, in this case, found a verdict against the defendant, and assessed damages at $1,800, upon which he moves that the verdict be set aside and a new trial granted on the ground that these damages are excessive.
This court have often had occasion to remark upon the difficulty of setting aside a verdict on the ground of excessive damages in the case of libel and slander, and the analogous cases of malicious prosecution, criminal conversation, seduction, and the like. They are analogous in this, that, in *230 general, they do not involve a loss of money, time, or business, capable of being measured and estimated, but are founded on damages done to one’s feelings, reputation, social position, hope of advancement, and the like. These are damages not measurable by any standard, but capable, in many instances, of producing the severest suffering, yet, in others, cause little or no actual injury. Each case depends so much on its own circumstances, that no standard can be laid down, or general rule fixed. Courts everywhere assert the power, and yet, for the causes stated, seldom exercise it.. Duberley v. Gunning, 4 T. R. 621; Hewlett v. Cruchley, 5 Taunt. 276.
Sometimes it has been said, that, although the court has full power to set aside the verdict in this class of cases, they will not do it, unless the damages are enormous, outrageous, or entirely disproportionate. But these intensive epithets afford very little aid in forming a standard, or arriving at any general and practical rule. For the question still recurs, on the facts in each case, what is “ enormous ” or “ outrageous ; ” and this depends on the nature and aggravation of each case, to be determined by all the circumstances.
Something like a general rule was laid down, in regard to the duty of the court in setting aside verdicts, when there is evidence on both sides, in Baker v. Briggs, 8 Pick. 122; in which it is said that, “ our law and constitution having given the ultimate decision upon the facts to the jury, to set aside their verdict, unless in extraordinary cases, when it is manifest that they have mistaken or abused their trust, will be to usurp a power which has been lawfully and properly withheld from us.” This has the appearance of a definite rule, but, when analyzed and reduced to its elements, it amounts to little more than saying, that the court will not set aside the verdict, unless they are quite satisfied that it is wrong. For what is the trust of the jury ? Clearly, to render a just and true verdict. But if the verdict is clearly wrong, this may have happened because the jury may have acted on an erroneous view of the law or of the fact, and then it is a mistake; or, they may have been actuated by bad motives, partiality, corruption or party influence, or personal or sec *231 tional prejudice, and this is an abuse of their trust. The fact that the verdict appears to the court to be wrong, is taken as proof that the jury have mistaken or abused their trust. See, also, Sargent v. —, 5 Cowen, 106.
The damages in this case are certainly very large, much larger, we are free to say, than we should have given, and it was highly proper that the case should be brought before the court on the evidence. Then the question is, are the damages excessive, that is, so beyond all reasonable limits, as to make it the duty of the court to set aside the verdict, and submit the case to another jury ? The considerations herein stated suggest one obvious and practicable admonition to the court, which is, that because there is no standard by which to measure the damages, the court will be slow to pronounce a verdict excessive, and will not set aside a verdict on that ground, unless it is for a sum beyond any reasonable amount, which any just view of the evidence which might have been taken by the jury, would warrant men of ordinary intelligence in awarding.
In looking at the libel in this case, though to some extent contemptuous, holding the plaintiff up to ridicule, there seems to be nothing likely to be seriously or permanently injurious to his interests, or his social position. It bears rather the character of a lampoon and a pasquinade, than a serious charge of criminality. But yet there are aspects, in which it may be regarded as considerably injurious to one situated like the plaintiff, comparatively a stranger, dependent upon the good will and good opinion of his countrymen. It plainly intimates that he had been ignominiously expelled from a society of journeymen tailors, who had placed confidence in him; the proof of which fact, though attempted at the trial, wholly failed.
The distinct statement was made, that, under a pretence of gratuitous and patriotic efforts to aid the cause of the journeymen tailors, with whom he had professed to feel a common interest and sympathy, he had done this from selfish and mercenary motives, and demanded money for these services at nine dollars per week. The proof of this also failed; it *232 being proved that he had received this wholly as pay for actual services, as salesman and book-keeper, in their estab* lishment.
The libel also stated that the plaintiff was attempting to make money by imposing upon women, the seamstresses, by falsely pretending to aid them.
The position of the defendant also shows, that he might have been induced to attack the plaintiff, because he was exerting some influence in attempting to establish a rival newspaper to that of defendant, amongst the foreigners and catholics of this country.
The libel consisted of a pretended report of the doings of a meeting of Irishmen, called to aid and promote the establishment of a rival paper ; and the obvious purpose was, to defeat such design, by ridiculing the promoters of it.
We cannot say that a jury might not consider this attempt to ridicule and vilify the plaintiff, with a view to destroy his influence with his countrymen, as emanating from mercenary motives, as having a very injurious influence upon the character and prospects of the plaintiff.
Repeating the remark, that we should have been much more satisfied with a lower assessment of damages, and should have fixed a lower rate had we been in the place of the jury, yet we cannot perceive in the verdict such mistake in principle, or the influence of such partiality or prejudice, as would warrant the setting aside of this verdict.

Judgment cm the verdict for the plaintiff.